Kelly, are you hearing me? Yes, I'm taking care of it right now. Okay, thank you. There we are. Well, good morning. I'm sorry for the late start, but our very competent technical staff had a few problems to take care of, and I think they're now set. We've got two argued cases this morning, the first of which is a State of William Pilgrim v. General Motors. Counselor, can you hear me? Please raise your hand if you can hear me. Got it. We've set it for 15 minutes aside, and Mr. Carr, I believe you go first. Thank you, Your Honor. Good morning. Michael Carr for Appellants, State of William D. Pilgrim et al. I'd like to reserve five minutes of my time for rebuttal. Okay. That's okay. The first point I'd like to address is the component part exception, the economic loss rule. It's plaintiff's belief that in order to apply the economic loss rule in California, a determination must first be made as to what the product is, the product in question, and this has to occur before you determine if the economic loss rule applies or if the component part exception applies. And there's a good amount of authority on both sides. GM has certainly cited quite a few cases as have we, and seemingly courts are split as to whether and how to make the determination as to what the product is. It's plaintiff's position that a direct line can be drawn from Jimenez through Bigby-Adler to the Sater v. Chrysler and Salvaser v. Ford cases to support an analysis in automotive defect cases. Jimenez was a mass-produced home suit where windows that were installed in the homes created caused damage to the homes, and Jimenez tells us that to apply the economic loss rule, we have to first determine what the product is, and there the court held that the economic loss rule did not apply, that the damage done by the defective windows to the house, the defective product was the window itself and not the house as a whole. Following on after that, we have KB Home where defective furnaces were installed in homes that were replaced. There again, the court held that it must first be determined what the product is, and it actually gave eight points as instructive factors. In your view, what is the product? Is it the valve guide? Is it the valve? Is it the engine? Is it the drivetrain? What's the product? Your Honor, that is the question. In our view, the product, the valves, the valve guides, and the cylinder head all are defective and kind of work in conjunction to cause these engine failures. So the damage is done by component parts to the engine, and then the engine does damage to the car. So there's a question here as to whether the part is the valves, the valve guides, and the cylinder heads, the engine, or the car itself. Yeah, yeah, yeah. No, I get that. Now, some, for some of your plaintiffs, I don't see that they have alleged damage at all, period. Some have not. They had issues. So it seems to me that those, they're out of court. I mean, why are they in the case? They've got no damage. They've got no recovery. I don't get it. They had repairs that they had to do to the engines to prevent catastrophic failure. I think there's a question as to what damage would be, whether you've lost the entire engine, thereby making the car inoperable, or whether you had issues with- These are older cars. I mean, it's routine to have repairs done on older cars that are out of warranty. Things go wrong. Parts go bad. I mean, I worked my way through part of high school and college working in a gas station doing engine repairs. Things go bad. You do a valve job. Correct, Your Honor. So I'm not quite sure I get it for those who did routine repairs. In this case, a lot of these cars, though they were older in years, they were not older in mileage. I mean, you have a 20,000 miles, 30,000 miles at eight years in. They're not used very often. They tend to be track cars or cars that are kept just for joyriding on the weekends and not daily drivers. So at some points, yes, there was routine maintenance done for the cars that were a little bit longer in the tooth, but for the cars- I've also got questions about some of these cars, the engines have problems when they're being raced. I mean, you watch any particularly stock car race, the engine blows up. That happens with beautifully maintained, well-designed engines. It just happens when you put them under stress. Sure. And if our planets have been racing the cars, then I would definitely agree. Are you saying that none of them were racing their cars? They weren't racing them. It's a driver education event. So you go and you learn, you sit with an instructor in the car and learn how to operate the car at higher speeds. And yes, they are driving them at higher speeds. They are on a track, but they're not racing against one another, trying to go for a win, as it were. So the KB home factors that I think can be applied, as we've got authority on both sides, you've got Bigby Adler, Sabitzer V4, Lopez, Sater for plaintiffs. And then again, we've got McCarthy, support Callahan and on and on, which none of these cases applied the KB home, this KB home test, the KB home factors. I shouldn't call it a test. Excuse me. They're factors that are instructive in determining what the component is. And certainly the first factor, does the defective component perform an integral part, the function of the operation of the larger product? Sure. And that supports GM's point that this is one whole product. The vehicle, you've got parts that when they fail, make the vehicle useless. You've got a decorative ornament for your driveway at that point. But as you move on in the analysis, does the component have an independent use to the consumer? Was the component purchased from a different manufacturer? Sure. Here, you've got cylinder heads that are machined by Linamar. You've got valves that are made by Del West, and you've got an engine that is available as a separate product. You can actually put this engine in any number of vehicles, including a Camaro. It's sold separately in other markets. It can be readily removed depending on your expertise as a mechanic. The products, the engine or the cylinder heads and intake valves can be removed from the damaged property. So applying that here, you've got a number of factors that lean towards plaintiffs. And I think that the Park-Kim versus Daikin cited by GM is instructive. It's the only, I believe the only case that was cited in the papers where this KB test was applied. Possibly the Sony track pad as well. But in Park-Kim, the HVAC units that were in question failed. And I guess the defective piece of that were the coils. These coils would have no use in any other application other than Daikin's HVAC units. They were manufactured by Daikin. So in that case, they found that the property or the product was the actual HVAC unit and not the subcomponent. Here in Pilgrim, we have the subcomponents, the valves that are manufactured by a different company, the cylinder heads that are machined by a different company. The engine's available as a separate crate engine that you can buy. You can order it online as some of our plaintiffs have. And it's notably compatible with other vehicles. So in making the analysis, I believe that the weight of these factors goes in the other direction where the product in question is the intake valve, the cylinder head, or if you want to look at it as the engine versus the car, but we believe that the product in question is the intake valve, the cylinder head, and the valve guides. Okay. Unless the court has any other questions, I'm going to reserve the remainder of my time for rebuttal. Okay. Let's hear from the other side. And you've got a lot of time left. Ms. Ross? Thank you, Your Honor. May it please the court, April Ross, on behalf of General Motors. Your Honors, the district court summary judgment decision in favor of GM on all counts here is a straightforward application of California law to the evidence or lack of evidence in the record in this case, and it should be affirmed by this court. There was nothing novel about the district court's application of California law. There was nothing novel or difficult about its conclusion, but the plaintiffs failed to develop the evidence necessary to support their claims. Throughout this litigation, the plaintiffs made a series of choices in the district court that led to the summary judgment decision. They ignored the district court's scheduling order. They did not disclose experts to support any of their allegations of a defect or of damages. They did not develop other admissible evidence to support their claims, and they ignored their own stipulations about the limitations of the claims they can bring against new GM for pre-bankruptcy old GM vehicles, and they ignored their stipulations that their own expert evidence is not admissible. And throughout, they ignored controlling California law, barring all their claims as a matter of law. Your Honor, there's a number of issues to discuss here. Mr. Carr has touched on one of them, which I certainly would like to respond to. I'll first point out that the plaintiffs do not appeal dismissal of their Beverly Consumer Warranty Act or their UCL claims, confirming that those claims fail as a matter of law. The court should affirm summary judgment for GM on the remaining claims, both because GM has demonstrated that plaintiffs do not have evidence to support their claims with respect to the existence of a defect or damages, and because California law bars those claims as a matter of law under the economic loss doctrine with respect to negligence, negligent failure to recall, fraudulent concealment, by the absence of a relationship giving rise to a duty to disclose with respect to the CLRA and fraud claims, and because as set forth in our brief, many of these claims are barred by the applicable statute of limitations. Let me ask you this. If your opponent is right with respect to the component part argument, do any of the claims survive? They do I disagree that the component part exception applies here, and I'll get to that in a minute, but the reason that none of the claims would survive is because of the fundamental failure of evidence in this case. Setting aside the application of the economic loss doctrine, here there is no evidence of a defect, no evidence of damages, and there's no way as a result that the plaintiffs could prevail on any of their claims at trial. So summary judgment was proper. Looking first at the question of whether they had evidence of a defect. Now this is a case dispositive issue as to all claims. It was briefed below, it was briefed in this court, and plaintiffs did not respond in any way to GM's arguments on this point. Reply is entirely silent on this, and therefore these arguments are uncontested on appeal. So first, your honors, as a matter of law, all of these plaintiffs own vehicles manufactured by what we refer to in our Motors prior to its 2009 bankruptcy. As a matter of law, as held by the bankruptcy court, claims for design defects may not be asserted against new GM, as new GM did not assume liabilities of that character for vehicles designed and manufactured by old GM. You can find that in the in-ring Motors liquidation decision on the 2013 Westlaw 620281, as we cite in our brief. All of plaintiffs' vehicles fit into that category, and plaintiffs do not respond on that point. Even if they could bring defect-based claims against new GM, the plaintiffs were required to offer competent admissible evidence at the summary judgment stage to show that their specific vehicles have defective valve guides, as they'd alleged in the complaint, and that they were harmed by that defect. We cite a number of cases on this point, including the In-Ray Toyota Motor Hybrid Brake litigation case, where the court confirmed that the plaintiff's own testimony about his vehicle experience after driving for thousands of miles is insufficient. Plaintiffs are required to present expert evidence, and here it is undisputed that plaintiffs have no admissible expert evidence of a defect. They did not serve expert reports by the deadline set by the district court. They later attempted to serve untimely disclosures that they titled non-retained expert testimony, but then they conceded that was improper, and they stipulated and filed with the district court a stipulation stating that they may not rely on expert opinions set forth in those disclosures absent leave of court because plaintiffs did not disclose those witnesses by the court's deadline. They never sought or received any leave to rely on that evidence, and it's inadmissible. They then attempted to attach those same reports to their opposition to GM's summary judgment brief, which again fails because GM didn't cite any of its own expert opinion, and therefore, their opinions are not admissible as rebuttal evidence as set forth in Rule 26A2D, which limits rebuttal testimony except where the evidence is intended solely to contradict or rebut other expert testimony. There was no expert testimony needed. This was an absence of evidence issue, and in any event, even if the district court could consider plaintiffs' untimely expert opinions, they did not have an expert inspect any plaintiff's vehicle. There is no evidence in this case that these particular plaintiffs have a defect. As your Honor, Judge Fletcher points out, these are older vehicles many thousands of miles. There is no evidence that they suffer from any particular defect, much less the undefined defect set forth in the complaint. Let me ask you this. When you say defect, are you saying that you can have a valve that fails or a valve guide that fails, but nonetheless that there was no design defect? Absolutely, Your Honor. As you know, vehicles are complicated machines. They've been driven for thousands of miles in many years. There are times where repairs are required, and in particular here, these are vehicles that were used by these plaintiffs in a very high-performance, stressful use on the engine. They're driving and may not be racing in the sense of there's a winner and a loser, but they are driving at track speeds on closed racing tracks, putting immense strain on the engine, and in many cases by relatively inexperienced drivers. The simple fact is there is no evidence in this case of a defect, and there never has been. There's also no evidence in this case to support damages, which again entitles GM to summary judgment on all claims. Plaintiffs never served initial disclosures in this case. Despite the deadline to do so, GM did serve its initial disclosures. They did not provide a computation of damages. They didn't offer any expert evidence, timely or otherwise, on damages, and they concede now that they have no evidence on diminution of value, which is the type of damages they plead in the complaint. So their only argument they're left with is to say that a handful of plaintiffs produced invoices in discovery showing that they paid out of pocket for certain repairs. For all of the other plaintiffs, they appear to concede there are no damages. They don't mention those plaintiffs on appeal and essentially concede that their claims were properly subject to summary judgment. With respect to those handful of plaintiffs who produced an invoice saying, I paid for a repair out of pocket, those claims don't defeat summary judgment because first, plaintiffs only pled any form of non-diminution damages with respect to two claims, the negligent failure to recall and the CLRA claim. So apparently they concede that summary judgment was correct as to all other claims because they did not prove the type of damages that they pled. But plaintiffs also did not plead out-of-pocket costs on their CLRA claims. They pled damages in the form of restitution concerning amounts paid for their vehicles, and they argue that two plaintiffs only, plaintiffs Murphy and Pendleton, offered evidence of the purchase price. But those plaintiffs did, there's no evidence that new GM obtained any money or property from those plaintiffs through their purchase. Murphy purchased from a private party, someone named Ed Frias, who's an individual, and Pendleton purchased a used vehicle from a third-party dealership. There's no evidence and plaintiffs have offered none that new GM has obtained any money from these plaintiffs for which restitution could even apply. And again, plaintiffs do not respond to these points in their reply. And finally, again, your honors, the plaintiffs did not serve any initial disclosures. They did not disclose their damages. Under Rule 37 C1, which is a self-executing automatic sanction, plaintiffs are not permitted to rely on that information to supply evidence at trial. So again, there is no evidence of damages. Plaintiffs made choices in how they litigated this case, and the result is that the district court entered summary judgment for GM. Now, I have a few minutes left, and I would like to address the economic loss doctrine and its component part exception that Mr. Carr spent a significant amount of time discussing. Here, there is no dispute that the negligence claim, the negligent failure to recall claim, and the fraudulent concealment claim under California law. There's also no dispute that this case does not involve any personal injury, and it does not involve any alleged damage other than to the engines of a certain number of the plaintiff's vehicles. They claim they needed to replace their engines. Therefore, that is the component that is damaged. So the question under California law, and in particular, we'll cite to the Digby-Adler decision, the KB Home decision, the Jimenez decision that Mr. Carr referenced, is whether or not this component is so integrated into the product that there is no damage to other property. And here, what we're talking about is the valve guide. The valve guide is hard to imagine a more integrated component of the engine than the valve guide. The valve guide is a cylindrical move up and down. Courts regularly find that the economic loss rule applies where one component of a vehicle damages other components of the vehicle itself, and has found that repeatedly in cases that involve component parts of the engine that damage the engine. We'll cite, Your Honors, to the Sonnevelt versus Mazda case, which is from earlier this year in the Central District of California. There, the court found the economic loss doctrine bars California negligence and fraud claims that an allegedly defective water pump failed and damaged other engine components and caused engine failure. That is essentially what we have here, an allegation that the cylinder heads or valves or valve guides or whichever theory plaintiffs have settled on for the moment is defective and damaged the engine. These are clearly integrated parts of the engine. If you look at the KB Home test that Mr. Carr referenced, does the defective component perform an integral function to the operation of the larger product? Clearly it does, and plaintiffs don't argue otherwise. Does the component have an independent use to the consumer? No, the valve guide has no independent use to the consumer of the vehicles. How related is the property damage to the inherent nature of the defect in the component? If the valve guides are allegedly defective and the damage is to the cylinder head as a result of the valve failure, that is inherently highly related to the function. Four, was the component itself or the larger product placed into the stream of commerce? The larger product, the vehicle, is placed into the stream of commerce and at minimum the engine is placed into the stream of commerce, but no one is purchasing valve guides nor could they. Was the component purchased from a different manufacturer? No, these plaintiffs purchased vehicles that were manufactured by Old GM that had engines in them that were manufactured by Old GM. Is the damaged property sold separately from the defective product? No, the valve guides are not sold separately from either the vehicle or the engine. Can the defective product be readily removed from the damaged product? It cannot. To remove or even to inspect the valve guides in this engine requires removing the cylinder head from the engine and dismantling many components to get down to where the valve guides are, and then they are inherently part of the block of the engine. You can't just pick them out and slide a new one in. Has the defective product been used in other applications or has it been listed as a separate part in the product's part catalog? That's the final factor from KB Home. No, there is no other application of the valve guide of an LS7 engine. It is a component integrated into the LS7 engine designed for that engine. The fact that the LS7 engine can be used in more than one vehicle doesn't render the valve guide somehow a separate component from the engine itself. So respectfully, Your Honor, I don't see how the component part exception has any bearing here. The case law in California is clear that where something is an integrated product, this is not windows built into a house. It's not a furnace in a house. It is a part of the engine that is integral to the engine and the only alleged damage is to the engine. Because there's no dispute the economic loss doctrine applies in the case of an integrated product, it clearly applies here and the district court correctly applied it in dismissing those claims or in granting summary judgment. I apologize. I only have a minute left. I want to touch briefly on a couple of points. One relates to the duty to disclose. Again, we've cited quite a bit of California case law holding consistently that duty to disclose in the case of an omission requires some sort of a relationship or transaction or direct dealings between the parties. It's undisputed that there were any direct dealings between these parties. These plaintiffs purchased old GM vehicles from third parties, not from new GM and new GM did not exist when some of them purchased their vehicles. I won't dwell on the statute of limitations, but we set forward. I can touch briefly on the class certification questions, but those are moot, frankly, because summary judgment was properly entered in this case. But suffice it to say that plaintiffs simply ignored the district court's rulings below, its schedule below, never sought to modify the deadlines that were set forth by the court, and then only when they violated those deadlines did they claim that there was any error. So, we ask that you affirm the decision below and I see my time is up. Okay, thank you very much. Mr. Carr, response. You're muted, Mr. Carr. Apologies. I'll start with that final point regarding the class certification. In ABS, the Ninth Circuit found that the local rule 23-3 was incompatible with federal civil procedure 23, where a plaintiff has been deprived of a ruling on the merits of its class certification motion. Other authority following on that, you've got Davidson v. O'Reilly. The Davidson court was allowed application of the 90-day rule, where the court gave the plaintiff 30 additional days to develop evidence. Mr. Carr, I don't think we get to the class certification question if we hold that none of the individual plaintiffs has a cause of action. Is that correct? That's correct. Yeah, okay. That's correct. So, Council, do you take exception to opposing Council's position that an expert opinion was required in order for your claim to succeed on the motion for summary judgment? No, no. So, if you don't take issue with that point, why? I'm sorry. I'm sorry, Your Honor. I said if you don't take issue with that proposition, then how can you prevail if you didn't offer expert opinion? We, yeah, I don't know where we can go from there. We were late producing our expert disclosure, so that would knock out our expert analysis, including our expert's analysis of one of our plaintiffs. So, we're not in a good position on that. So, Mr. Carr, let me ask you this. You've got a lot of plaintiffs in this case. Who is your best plaintiff? Like, if you had to say, okay, out of the 20 plaintiffs I got in this case, however many there are, Judge Fletcher, Judge Rollins, and Judge Owens, here's the one. This is why the district court got it wrong, because look at this guy, or look at this woman. Who is that plaintiff that we can say, okay, now I see there's a case here? Anthony Stack would be our best. His was the, unfortunately, the engine that was analyzed by our experts. The only engine that our expert has seen, because these engines, when they're replaced, tend to disappear. So, we have our one plaintiff who bought a crate engine, as we spoke about before, and replaced it on his own. He has all the receipts, communications with dealerships, GM dealerships, and yes. Did the expert actually examine the engine? That's correct, or the cylinder has been... I thought a posting council represented that your expert did not actually physically examine any of the engines. He examined Mr. Stack's engine. We're in the record. Can we go to confirm that your expert examined the engine physically? I believe it would be one of our experts' declarations. Rob Harrison did a number of declarations. Do you have a record site? Motion for class certification. If you don't have it right at hand, your time is winding down. Yeah, I'm sorry, Your Honor. I do not have it at hand, but our expert, Robin Harrison, did a declaration in support of our motion for class certification. Okay, well, we can find it, although your experts, you have no qualified expert. Let me come back to Judge Rawlinson's question that you answer only partially. She said, or asked you, if you have no expert evidence, don't you lose? Well, you conceded that you had no expert evidence, but you didn't answer the question as to whether you lose in the absence of expert testimony. Do you lose in the absence of expert testimony? That would depend on whether we can use our expert testimony in rebuttal, Your Honor. So, if you cannot use it... So, do you concede, then, that in the absence of expert testimony on direct and the absence of expert testimony on rebuttal, you lose? If there is an absence of expert testimony on direct and on rebuttal, yes. Yes, Your Honor. That's correct. Okay, thank you. Any further questions from the bench? Okay, thank both sides for your helpful arguments. The state of William Pilgrim versus General Motors is now submitted for decision. Thank you. Thank you, both counsel.
judges: Fletcher, Rawlinson, Owens